May it please the Court, Ian Silverberg on behalf of the appellant, Mr. Rene Herrera-Castanola. This matter is before the Court. I'm sorry, as a preliminary matter, let me make sure. Judge Gould, we can see you. Can you see and hear us? I can see and hear you. I hope you can hear me. And we can hear you perfectly. Okay, I'm sorry. I should have started out with that. That doesn't come off your time. No, no problem. Thank you, Judge. This matter is before the Court on an action for declaratory relief that was filed in the district court in front of the Honorable Judge Reed. And as the Court is well aware, this case has made its way to the Ninth Circuit on a few different occasions in a few different contexts. On this particular one, Mr. Herrera sought declaratory judgment on the issue of five specific things, and they all are based on a finding of Judge Reed in an unlawful reentry case in which he found that the government was a stop from claiming that the appellant was an alien in this case. And I think it's very important in this matter to start by looking at the five claims for relief that were requested, because I think the analysis for the first one is going to be a little bit different for the remaining ones. Specifically in the first one, it was asked that the Court declare that the plaintiff at the time, the appellant herein, is not an alien for purposes of removal proceedings. And the reason I want to separate that one out is because the analysis there, I believe, does not require the Court to reach the issue and what is probably the most contested issue in this case, which is whether the Federal court has jurisdiction to confer citizenship over an appellant having been met first. Now, that, I believe, is a substantially different question than whether or not the government is a stop from asserting somebody is an alien. Now, I believe that based on our brief and the applicable law that we can reach that point that the Court could confer citizenship, because I believe there was a constitutional violation here by not applying the doctrine of res judicata and collateral estoppel to the appellant's case. But again, on this first instance alone, I think it's far different for the Court to declare that the government cannot claim somebody is an alien based on affirmative government misconduct as opposed to conferring citizenship on that person. And I think they are very different. You know, when Judge Reed entered his order, he did not make that distinction. And as I was reading my brief, I had wished I had made that distinction a little more clearly as well. But I do believe it is clear enough in the brief that there is the issue of res judicata and collateral estoppel, and then there is the issue of did that affirmative government misconduct rise to a level of a constitutional violation that would allow the Court to confer citizenship on Mr. Herrera? Counsel, can I ask a question about, really, any of your theories? Your briefing talks about misconduct by the government. Yes. And I just wondered, as I read through your briefing, whether or not any of your arguments change if we're talking about intentional misconduct as opposed to an error, a clerical error made by the government. Thank you, Your Honor. I don't believe it changes our analysis, because I believe we are all stuck with the opinion that was not appealed from the unlawful reentry case, which, in that order, is found the most important part of page 168 of Volume 2. So we wouldn't have to decide there's misconduct, some kind of an intentional wrongdoing, to – according to your argument, it would be enough if the government goofed. I don't believe we have to reach that issue at all, because there's already been that finding of affirmative government misconduct. In my research of these cases, I would agree that there is a distinction to be made, not applicable in this case, whether somebody just made a mistake, an honest mistake, when they went to seek information about naturalization, as opposed to being affirmatively misled. And I think it's important to note on that page where Judge Reed, on page 168, Volume 2, did indicate that there was that affirmative government misconduct, and that was the basis of his estoppel holding and the dismissal of the indictment. Counsel, I've got – if I could interject a couple of questions. I'll let you know what is on my mind primarily, and it's without regard to the distinction you've just argued, that maybe we could give relief on estoppel even while we don't say he's a citizen. But as to whether we have power to say that he should be viewed as a citizen, correct me if I'm wrong, but my understanding is that the case of Pangilinan, I think, I don't know if I'm pronouncing it right, would hold that we cannot confer citizenship based on a statutory violation. Thank you, Your Honor. If that's correct, then your position is we can do it if there's a constitutional violation. That is exactly our position in this case. Okay, so now here's the refinement I'd like you to give me your best thinking on. Let's assume that we could confer citizenship based on some constitutional violations. Like, for example, if there was a statute that said male children who met certain characteristics would get citizenship but not female children, you know, then we could remedy the equal protection violation by saying, well, they should all get the citizenship. But if you have something like your theory in this case, like a due process violation by not applying collateral estoppel, is that the type of constitutional violation that would empower us to give citizenship? I believe it is, Your Honor. Is there any authority on that? Yes, and although not in my brief, the first case that I would point to is a U.S. case, 1866 U.S. 308, and the Supreme Court left the door open in that case that a finding of governmental misconduct can, in fact, be a basis for conferring for a court, a Federal court to confer citizenship. And then again, after Pangolinan, and, Your Honor, I will most likely butcher the names of these cases as well, there was a case that this Court entered in 1993 cited in my brief, which is the Watchoke case, I believe. I'm probably butchering it. But that is where this Court made the distinction and felt that the district court had gone too far in the – in its application of Pangolinan. And this Court made that distinction very clear between a statutory violation and a constitutional violation. So both the Supreme Court and this Court are open to a finding that there is somewhere out there some sort of governmental misconduct that could rise to a level of a due process violation. I've only been able to find some very old cases that have even marginally touched on it, but I don't think since Pangolinan and this Court's decision in Watchoke has there been that precise issue raised on what type of governmental misconduct would in fact rise to the level of a constitutional violation. I think in this matter there's two reasons for that. Well, let me just stick with the one main reason, is that the doctrine of res judicata and collateral estoppel here, and for that I've cited to the Third Circuit case of Chehazeh v. the Attorney General, where they talk about failure to apply res judicata as subjecting somebody to repeated litigation is a substantive violation of their due process rights. Assuming that we disagree with you on this constitutional argument, that we think that this is not the sort of constitutional argument that would allow us to confer citizenship so it's sufficiently distinct from an example, for example, from the Watchoke case, if that's how I pronounce it, and your argument remains, well, you want a declaratory judgment that at least he is not an alien for purposes of a removal proceeding. I think that's our strongest position, Your Honor. But I really didn't see that in your brief. Right. And again, I believe I've hit on that distinction by citing the Chehazeh case, but I certainly in looking back wish I would have been more clear on that very issue. But assuming that we don't find the argument waived because it's not in your brief with sufficient clarity, assume the argument is properly in front of us, why should we do that with the case in this posture rather than waiting for that question to be raised if and when the government seeks to remove and have the argument raised in the removal proceeding? And if I could just give the Court some background. I just filed my petition for review brief yesterday on this matter. And so he was placed in removal proceedings. I asserted at the immigration court that we're served with a notice to appear in those circumstances. We denied that he was an alien consistent with what Mr. de la Cruz has been doing up to when I filled in in this matter. And the Court found that he was an alien and subject to the jurisdiction of the immigration court. I appealed that to the Board of Immigration Appeals, which affirmed the determination of that court. And now it is on petition for review. And so when you say the court, the IJ found that, the BIA affirmed, and it's now on petition review in front of us. Exactly. So it's coming. It's coming. Late, but it's coming. So and that may be one way to handle it, but I think that a decision by this Court, and certainly if the Court finds that the lower court did have jurisdiction just even on the narrow issue that the Court has mentioned, and which I believe is our stronger argument, because it doesn't require the court to reach that ultimate question of can you confer citizenship, I believe in those circumstances that a decision by the lower court would stop the entire process. In other words, by allowing the petition for review to go forward the way it did, I think it's sort of putting the cart before the horse in this case, and that a ruling by a Federal ---- and that was the whole purpose of going to Federal court on the declaratory relief action, was to try to stop the immigration proceedings from going forward. As an immigration practitioner, it's pretty predictable how that would go until we got to this point. So ---- But actually, this question was presented to the BIA at an earlier time, and my recollection is that they agreed with the estoppel position in an earlier removal proceeding. Isn't that right? Twice, Your Honor, and I'm sure my colleague will speak to that as well. The government went back to the Board of Immigration Appeals after this Court vacated the grant of habeas by Judge Reed, and there was a finding that everybody agreed that he was no longer in custody and that the issue was moot. So it's not that the case was overturned on a finding that res judicata didn't apply. It was because he was no longer considered to be in custody. They went back to the BIA with that order, and the BIA left that option open in a footnote in their last ---- which I've made a part of our record. I don't have the exact site. I apologize. They made that part of the record a footnote that said you can come back if there's some change, some material change. But I think what the Court meant there, is there a material change as to Judge Reed's order dismissing the indictment in the unlawful reentry case? But they went ahead and withdrew their opinion and allowed removal proceedings to go forward anyway. I think that was a mistake. I was not involved at that point. Now, once that happened, everything got sent back to the immigration court, and we've sort of had to wait for that process to creep along as we go ahead. And I hope that answers the Court's question. But the Board has definitely looked in ---- has definitely seen or recognized that it itself is bound by the doctrine of res judicata and collateral estoppel. I was wondering if you might want to save a couple of bullets to make a reply argument. Your Honor, I'll save that time. I'm not sure I will definitely make those points, but I would happily save that time unless there are any other questions. And I think it's up to you. I just wondered if you might benefit by being able to respond to the government's particular arguments. Thank you, Your Honor. Thank you for your time. Good morning, Your Honors. Good morning, Your Honor. My name is Colin Kizer from the Office of Immigration Litigation and Justice Department in Washington, D.C., and I represent the appellees in this case. And I think that Mr. Silverberg's first point is a very good point. He started off his argument by saying that the Court should look at the five claims for relief articulated in the complaint. And as the district judge correctly found, there was no jurisdiction for that Court at that time to entertain any of those claims. And that's because the case did not get before the district court under any of the mechanisms in the Immigration and Nationality Act that allow for a district court to consider a claim of citizenship. For example, if Mr. Herrera had, rather than file a declaratory judgment action and all of his claims for relief are for declaratory relief, had instead applied for a passport and had it denied by the State Department, he could have filed a 1503 and 8 U.S.C. 1503 action and there would have been plenty of jurisdiction in the district court to consider whether or not he was a citizen. If he wanted to take the position that he should be allowed to naturalize, he could have filed a naturalization application and it most likely would have been denied because of his criminal history. But there would have been jurisdiction under 8 U.S.C. 1421C for the district court to make a de novo determination of that. On his petition for review, he was he is free and did make this estoppel, citizenship by estoppel claim to the Immigration Courts, to the Board of Immigration Appeals and now has filed a petition for review with that claim in this court. My understanding from opposing counsel is he filed his brief last night. I did get notification of that. That's not my case, by the way, the PFR case, and I haven't read the brief. But that claim could get to this court that way. But what it can't do, what Mr. Herrera can't do is file a simple declaratory judgment action in the district court saying that he's a citizen. If any of us born in the United States went to file a declaratory judgment action in a district court saying that we believe we're a citizen and should get a declaratory judgment for that, the court would have to dismiss it for lack of jurisdiction. Well, I'm not sure that the vocabulary here makes much difference. I think you're right that the court would have to dismiss it. I'm not sure it would have to dismiss it for want of subject matter jurisdiction because you can lose, even though the court has jurisdiction, it may just be that the court doesn't have authority to do it because you lose on the merit. So I'm not sure that fine grain vocabulary distinction makes much difference. Assume for the moment that he has not waived the argument, that he doesn't want a declaration, a declaratory judgment that he's a citizen. He only wants a declaratory judgment that he cannot be held to be an alien in a removal proceeding. Assume for the moment that that question is properly before us. I understand that there's a going to be a waiver argument, but assume for the moment that it's here. If he has an argument that he is not a citizen or the court wouldn't reach the issue of whether or not he is a citizen, but instead he just wants a declaratory judgment that he is not an alien. Whether the government is to stop from asserting his alienage in a removal proceeding. Whether the government is to stop from asserting his alienage in a removal proceeding. And he relies, of course, on res judicata from the earlier proceeding. Yeah. Right. Yes, Your Honor, although, am I also to assume that he has a jurisdictional basis for an estoppel claim in the district court for the purpose of reaching the answer to a question? Well, he's got a 1331 claim. That is to say, he says there's a Federal question here. I've got a right to a declaratory judgment that I am free at least on some version of Federal law. Let's assume that there's 1331 jurisdiction. What I'm worried about, of course, is the appropriate forum and the appropriate time to present the question. Right. Yes, Your Honor. Well, 8 U.S.C. 1252G would bar a district court in joining a removal proceeding. In joining? District courts in joining a removal proceeding. Okay. So that would be a jurisdictional argument as well if that claim were to survive. However, does that extend to a declaratory judgment? With respect to a removal proceeding? Yes, it does, Your Honor. So it's not just injunction, but a declaratory judgment as well? Yes, Your Honor. Okay. However, to answer your question more fully, the Immigration and Nationality Act contemplates two categories of people, citizens and aliens, and it's a toggle switch. So if you are not a citizen, you are an alien, and there is one caveat for U.S. territories overseas that are nationals but not as citizens, and that doesn't apply to Mr. Herrera. So the Court doesn't have any power to declare someone not an alien. Now, the Court certainly could and did dismiss an indictment under an equitable estoppel theory, but that order extends to dismissing the indictment, and the government has not sought to reinstate the illegal reentry indictment. However, it can't pervade into removal proceedings because what would have to happen is for there to be a judicially created third category of non-citizen, non-aliens or aliens with a footnote or something that's not contemplated by the INA, which is foreclosed by the logic of Pendleton, as well as the logic of the other cases that are cited in our brief and in opposing counsel's brief. I will add one word about the Montana v. Kennedy case that opposing counsel just cited. That was a case, a Supreme Court case in the 90s. Counsel, counsel, could I ask you one quick question, please? Assuming that we affirm the district court's dismissal for lack of jurisdiction, can the appellant here get a full review of his citizenship by estoppel or just estoppel so that you can't remove the narrower argument in the petition for review process? Absolutely, Your Honor. That is a claim, that is a question of law that is – that can be raised under 12 – USC 1252 to the court of appeals via a petition for review. And although I haven't read opposing counsel's brief, I'm virtually certain that that issue is in there. So this Court, under that mechanism, could consider that claim. But this Court cannot consider that claim under an appeal of a district court's dismissing a complaint because there wasn't jurisdiction in the district court to hear it in the first instance. Thank you. Regarding the Montana v. Kennedy case, that was a case where a pregnant mother was told not to return to the United States, quote, unquote, in that condition. And the Supreme Court declined to apply estoppel against the United States in that regard because the baby would have been born in the United States and, therefore, a United States citizen, which just goes to show how high the bar is for governmental misconduct. And I'm touching on Your Honor's question earlier to Mr. de la Cruz as to whether or not this Court would need to look behind the estoppel, original equitable estoppel claim that Mr. and Mrs. Bethuram were misled. That is a very, very high bar. The government did not appeal that finding because the government had another avenue available to it, which was removal proceedings. And to the extent that the government has persistently been trying to remove Mr. Herrera from this country, that is entirely true. Mr. Herrera is presently incarcerated in Nevada for crimes that occurred after the Ninth Circuit issued its opinion in 2009, when we were last here. Thank you. I don't have any further argument to make unless I'm happy to entertain any questions, Your Honors. I think that's it. Thank you. Thank you very much, Your Honors. Mr. Silverberg, response? Thank you. Just very briefly, the jurisdictional basis, as the Court mentioned, asked to assume in a hypothetical is the Federal question claim, Your Honor, the 1331 and Fifth Amendment substantive due process claim. And we believe that is the basis for jurisdiction here, in that the denial of application of res judicata and collateral estoppel deprived Mr. Herrera of the his Fifth Amendment due process rights. I'm obviously concerned about the waiver issue that the Court has raised, and I just want to point to page 7 of our brief in the citing to the Chehezeh opinion out of the Third Circuit, where I quote extensively for the proposition that res judicata and collateral estoppel do apply full force and effect in immigration proceedings. And while that is not exactly on point, I believe it is close enough, hopefully, to survive any waiver issue. Counsel, forgive me, what page? Page 7 of my opening brief, Your Honor. 7? 7, yes. And that's the Chehezeh, I'm probably butchering the name, v. Attorney General 666F3118 out of the Third Circuit. I see it. Thank you. Thank you. Yeah, I have a question for you, Counsel. Certainly. I'm not sure if the waiver issue would end up being controlling, but one way we could avoid a waiver issue, if we wanted to squarely reach the issue that you've refined and presented at the start of your argument, I suppose would be that call for supplemental briefing from you and the government on that issue. And of course, we shouldn't do that. It's absolutely waived, but I think we'd have the power to do that. So let me just ask, if we were to do that, how would you phrase it? What do you think our order should ask you and the government to brief? Thank you, Your Honor, and I'd welcome the opportunity to do it. And I would refer specifically to page 216, which is the, of our, of volume 2, which is the, the claims for relief in the declaratory judgment action. And the first one in particular, which would be, I would expect and hope the, welcome the opportunity to further brief the issue as to whether or not the government, as he stopped from claiming that Mr. Herrera is an alien based on the prior dismissal of the Federal indictment and the finding of affirmative government misconduct. Would you limit that to just for purposes of a removal proceeding? Yes, if that were the question. I think that, from my client's perspective, that's what this boils down to. Whether or not he's actually made a citizen or not, I mean, we briefed that issue. But I think the more solid ground is that the government is simply a stop. And that may leave him in limbo, but it'll keep him out of the hands of, of deportation. Can you, I've got the record in front of me. Sir. Can you, let's read it together. So where is it that you say? Page 216, at line 16, where we ask the district court to enter an order declaring that the plaintiff is not an alien for purposes of removal proceedings. Okay. Judge Gould, did I interrupt you? No, you didn't. I'm fine. Unless there are any other questions, I thank you very much for your time and questions. Okay. Thank you very much. The case of Herrera-Castaneda v. Holder is now submitted for decision.
judges: Fletcher, Gould, Christen